# United States District Court
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| STATE OF NEVADA, ET AL. § <br> § <br> v. § <br> § <br> UNITED STATES DEPARTMENT OF § <br> LABOR, ET AL. § <br> § | Civil Action No. 4:16-CV-731 <br> Judge Mazzant <br> LEAD |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is the Motion for Expedited Summary Judgment (Dkt. #35) filed by the Plano Chamber of Commerce and more than fifty-five Texas and national business groups (collectively, "Business Plaintiffs"). After considering the relevant pleadings, the Court grants Business Plaintiffs' motion.

## BACKGROUND

Congress enacted the Fair Labor Standards Act ("FLSA") in 1938. The FLSA requires employees engaged in commerce to receive no less than the federal minimum wage (currently, $7.25 per hour) for all hours worked. Employees are also entitled to overtime pay at one and one-half times the employee's regular rate of pay for all hours worked above forty in a week. When enacted, the FLSA contained a number of exemptions to the overtime requirement. Section 213(a)(1) of the FLSA exempts from both minimum wage and overtime requirements "any employee employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). This exemption is commonly referred to as the "EAP exemption." While the FLSA did not define the terms "bona fide executive, administrative, or professional capacity," Congress delegated to the Secretary of Labor the power to define and delimit these terms through regulations. The Secretary of Labor authorized the Department of Labor (the "Department") to issue regulations that interpret the EAP exemption.

The Department's initial regulations defined "executive," "administrative," and "professional capacity" employees based on the duties they performed in 1938. Two years later, the Department revised regulations to require executive, administrative, or professional capacity employees to be salaried.

In 1949, the Department again amended regulations. These regulations established the "long" test and the "short" test for assessing whether an employee qualified for the EAP exemption. The long test combined a low minimum salary level with a rigorous duties test, which restricted the amount of nonexempt work an employee could do to remain exempt. The short test combined a high minimum salary level with an easier duties test that did not restrict amounts of nonexempt work. After the Department implemented the long and short tests, Congress amended 29 U.S.C. § 213(a)(1) in 1961. This amendment permitted the Department to define and delimit the exemption "from time to time."

In 2004, the Department eliminated the long and short tests, replacing them with a "standard" duties test that did not restrict the amount of nonexempt work an exempt employee could perform. In addition, the Department set the salary level equivalent to the lower minimum salary level previously used for the long test. The 2004 regulations, which are currently in effect, require an employee to meet the following three criteria to be exempt from overtime pay. First, the employee must be paid on a salary basis (the "salary-basis test"). Second, an employee must be paid at least the minimum salary level established by regulations (the "salary-level test"). The current minimum salary level is $455 per week ($23,660 annually). Third, an employee must perform executive, administrative, or professional capacity duties as established by regulations (the "duties test").

On March 23, 2014, President Obama issued a memorandum directing the Secretary of Labor to "modernize and streamline the existing overtime regulations for executive, administrative, and professional employees." Presidential Memorandum of March 13, 2014; Updating and Modernizing Overtime Regulations, 79 Fed. Reg. 18,737, 18,737 (Mar. 13, 2014). Although the Department revised regulations in 2004, the President opined, "[R]egulations regarding . . . overtime requirements . . . for executive, administrative, and professional employees . . . have not kept up with our modern economy." *Id.* In response to the President's memorandum, the Department published a Notice of Proposed Rulemaking to revise 29 C.F.R. Part 541. The Department received more than 293,000 comments on the proposed rule, including comments from businesses and state governments, before publishing the final version of the rule (the "Final Rule") on May 23, 2016.

Under the Final Rule, the minimum salary level for exempt employees increased from $455 per week ($23,660 annually) to $913 per week ($47,476 annually). The Department bases the new salary level on the 40th percentile of weekly earnings of full-time salaried workers in the lowest wage region of the country, which is currently the South. The Final Rule also creates an automatic updating mechanism that adjusts the minimum salary level every three years. The first automatic increase is scheduled to occur on January 1, 2020.

The State of Nevada and twenty other states (collectively, "State Plaintiffs") filed suit against the Department, the Wage and Hour Division of the Department, and their agents (collectively, "Defendants") challenging the Final Rule (Dkt. #1). On October 12, 2016, State Plaintiffs moved for emergency injunctive relief (Dkt. #10).

Business Plaintiffs filed a similar action challenging the Final Rule in *Plano Chamber of Commerce et al. v. Perez et al.*, No. 4:16-CV-732 (E.D. Tex. Sept. 20, 2016). The Court

consolidated Business Plaintiffs' action with State Plaintiffs' action on the unopposed motion of Business Plaintiffs (No. 4:16-CV-732; Dkt. #11). On October 14, 2016, Business Plaintiffs moved for expedited summary judgment (No. 4:16-CV-732, Dkt. #7; No. 4:16-CV-731, Dkt. #35). On November 18, 2016, Defendants filed a response (Dkt. #56). On November 21, 2016, Business Plaintiffs filed a reply (Dkt. #58).

On November 22, 2016, the Court preliminarily enjoined the Final Rule, which prevented the rule from going into effect on December 1, 2016 (Dkt. #60).[1] The Court's injunction applied to both states and businesses on a nationwide basis.

On December 12, 2016, State Plaintiffs filed a motion to join Business Plaintiffs' motion for summary judgment (Dkt. #66). State Plaintiffs also requested the Court to consider their preliminary injunction briefing as part of the pending motion for summary judgment (Dkt. #66). On August 30, 2017, the Court granted State Plaintiffs' motion and thus will consider State Plaintiffs' preliminary injunction briefing as the States' briefs in support of summary judgment (Dkt. #97). The Court will likewise consider Defendants' preliminary injunction briefing as their opposition to State Plaintiffs' arguments (Dkt. #97).

## STANDING

Before reaching the merits of Business Plaintiffs' motion, the Court must assess whether they have standing to sue in federal court. Article III of the Constitution limits federal jurisdiction to "Cases" and "Controversies." Standing addresses whether a plaintiff is the proper party to bring a matter before the court for adjudication. A plaintiff does not have Article III

---

[1] The Department appealed the Court's preliminary injunction order on December 1, 2016. In its appellate brief, the Department indicated the Court's reasoning would invalidate all versions of the salary-level test that the Department has used for the last seventy-five years. Although the Court stated it was not making a general statement on the lawfulness of a salary-level test, the Court acknowledges its injunction order might have been confusing. In the analysis set forth below, the Court clarifies any confusion regarding the general lawfulness of the salary-level test and the lawfulness of the salary-level test under the Final Rule.

4

standing if it cannot present a case or controversy. In *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992), the Supreme Court held Article III standing requires a plaintiff to show the following elements: (1) it has suffered an "injury in fact" that is concrete, particularized, and actual or imminent; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely the injury will be redressed by a favorable decision. An association has standing to bring suit on behalf of its members when: "(a) its members would otherwise have standing to sue in their own right; (b) the interests at stake are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).

The Court finds Business Plaintiffs have met their burden of establishing Article III standing. Business Plaintiffs are local, state, or national trade associations representing millions of employers in Texas and throughout the country. It is clear the Final Rule directly affects both Business Plaintiffs and the employers they represent. For example, Business Plaintiffs and their members would incur significant payroll, accounting, and legal costs to comply with the Final Rule, both before and after its effective date. In addition, the Final Rule would affect how Business Plaintiffs and their members manage executive, administrative, and professional capacity employees who now qualify for overtime pay. Millions of these types of employees would have to be reclassified from salaried to hourly workers, resulting in limited work hours, reduced pay, and fewer opportunities for career advancement. If the Court determines the Final Rule is unlawful, then Business Plaintiffs' alleged injuries would either be avoided entirely or be sufficiently redressed by preventing further injury.

# RIPENESS[2]

Defendants argue any challenges to the Final Rule's automatic updating mechanism are not ripe for adjudication. The Court is unpersuaded by this argument. A challenge to administrative regulations is fit for review if "(1) the questions presented are 'purely legal one[s],' (2) the challenged regulations constitute 'final agency action,' and (3) further factual development would not 'significantly advance [the Court's] ability to deal with the legal issues presented.'" *Texas v. United States*, 497 F.3d 491, 498–99 (5th Cir. 2007) (citing *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 812 (2003)). Here, State Plaintiffs and Business Plaintiffs make only legal arguments. Both Plaintiff groups question whether the Final Rule is lawful, whether the Department has authority to promulgate the Final Rule, and whether the automatic updating mechanism complies with the Administrative Procedures Act ("APA"). After completing a robust notice-and-comment period, the Department published the final version of the Final Rule on May 23, 2016, and set the rule to go into effect on December 1, 2016. Further, the Final Rule creates new legal obligations for employers who must pay certain employees a higher minimum salary level to exempt such employees from overtime pay. Thus, all parts of the Final Rule constitute final agency action. *See Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (stating the two-part test for "final agency action" includes an action that marks the consummation of the agency's decision-making process and an action where "rights or obligations have been determined, or from which legal consequences will flow"). The facts of this case have sufficiently developed to address the legality of the Department's Final Rule at this stage in the litigation. Accordingly, the automatic updating mechanism is ripe for review.

---

[2] Defendants raised this argument in response to State Plaintiffs' preliminary injunction briefing.

**LEGAL STANDARD**

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is proper under Rule 56(a) of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). Substantive law identifies which facts are material. *Id.* The trial court "must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment." *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981).

The party seeking summary judgment bears the initial burden of informing the court of its motion and identifying "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" that demonstrate the absence of a genuine issue of material fact. Fed. R. Civ. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 323. If the movant bears the burden of proof on a claim or defense for which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Where the nonmovant bears the burden of proof, the movant may discharge the burden by showing there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth

particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248–49). A nonmovant must present affirmative evidence to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. Mere denials of material facts, unsworn allegations, or arguments and assertions in briefs or legal memoranda will not suffice to carry this burden. Rather, the Court requires "significant probative evidence" from the nonmovant to dismiss a request for summary judgment. *In re Mun. Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1982) (quoting *Ferguson v. Nat'l Broad. Co.*, 584 F.2d 111, 114 (5th Cir. 1978)). The Court must consider all of the evidence but "refrain from making any credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

## ANALYSIS

1. Application of the FLSA to the States[3]

State Plaintiffs argue the FLSA's overtime requirements violate the Constitution by regulating the States and coercing them to adopt wage policy choices that adversely affect state priorities, budgets, and services. State Plaintiffs rely on *National League of Cities v. Usery*, which held the Tenth Amendment limited Congress's power to apply the FLSA's minimum wage and overtime protections to the States. 426 U.S. 833, 851–52 (1976). The Supreme Court recognized:

> One undoubted attribute of state sovereignty is the States' power to determine the wages which shall be paid to those whom they employ in order to carry out their governmental functions, what hours those persons will work, and what compensation will be provided where these employees may be called upon to work overtime.

---

[3] State Plaintiffs asserted this argument in their preliminary injunction briefing.

*Id.* at 845. State Plaintiffs acknowledge the Supreme Court overruled *Usery* in *Garcia v. San Antonio Metropolitan Transit Authority*, 469 U.S. 528 (1985). However, they urge *Garcia* has been, or should be, overruled because subsequent decisions have called into question *Garcia*'s continuing validity. As such, State Plaintiffs claim the Department's Final Rule displaces their independence to set employee compensation, similar to the FLSA amendments at issue in *Usery*.

*Garcia* controls the disposition of this issue. The Supreme Court in *Garcia* established Congress has authority under the Commerce Clause to impose the FLSA's minimum wage and overtime requirements on state and local employees. 469 U.S. at 554. The Supreme Court overruled *Usery* because it found rules based on the subjective determination of "integral" or "traditional" governmental functions provide little or no guidance in determining the boundaries of federal and state power. *Id.* at 546–47. In the line of cases following *Garcia*, the Supreme Court imposed limits on the power of Congress to enact legislation affecting state and local governments. *See, e.g.*, *Printz v. United States*, 521 U.S. 898, 935 (1997) (holding Congress cannot compel the states to enact or administer a federal regulatory program). However, no Supreme Court case has specifically overruled *Garcia*. The Supreme Court has declared lower courts must follow precedent and allow the Supreme Court to overrule its decisions. *Agostini v. Felton*, 521 U.S. 203, 237 (1997) (quoting *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989)). Therefore, the Court will follow *Garcia* and apply the FLSA to the States.

2. Application of the Clear Statement Rule[4]

State Plaintiffs also argue the FLSA does not apply to the States based on the clear statement rule. This argument likewise does not succeed.

---

[4] State Plaintiffs asserted this argument in their preliminary injunction briefing.

The clear statement rule provides, "If Congress intended to alter the 'usual constitutional balance between the States and the Federal Government,' it must make its intention to do so 'unmistakably clear in the language of the statute.'" *Gregory v. Ashcroft*, 501 U.S. 452, 460–61 (1991) (quoting *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 242 (1985)). The FLSA requires employers to pay the federal minimum wage to their employees or those "employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 206. "Enterprise engaged in commerce or in the production of goods for commerce" is defined to include the "activity of a public agency." *Id.* § 203(s)(1)(C). A "public agency" means "the government of a State or political subdivision thereof; any agency of . . . a State, or a political subdivision of a State." *Id.* § 203(x). Because Congress's intention for the FLSA to apply to the States is "unmistakably clear in the language of the statute," the clear statement rule does not apply. *Scanlon*, 473 U.S. at 242.

3. Application of *Chevron* to Section 213(a)(1)

Business Plaintiffs claim the Final Rule's revision to the minimum salary threshold exceeds the Department's authority under Section 213(a)(1). Business Plaintiffs argue the Final Rule increases the minimum salary threshold so high that it is no longer a plausible proxy for the job duties of an executive, administrative, or professional capacity employee. As a result, Business Plaintiffs assert the Final Rule is inconsistent with the FLSA and departs from both Department regulations and judicial decisions that Congress has accepted.

Defendants contend the Final Rule is within their delegated authority because Section 213(a)(1) explicitly grants authority to the Department to "define[] and delimit[]" the terms "bona fide executive, administrative, or professional capacity." Thus, Defendants

encourage the Court to defer to the Department's interpretation of the statute as set forth in the Final Rule.

The Supreme Court established in *Chevron* a two-step standard for reviewing agency decisions. *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984). The first step of *Chevron* is to determine whether Congress has directly and unambiguously spoken to the precise question at issue. *Id.* at 842. To aid in this inquiry, a court should apply "traditional tools of statutory construction." *Id.* at 843 n.9. Statutory construction begins with the language of the statute, "the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997). A court may also reference the statute's legislative history and its purpose to ascertain Congress's intent. *Bellum v. PCE Constructors, Inc.*, 407 F.3d 734, 739 (5th Cir. 2005). "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 842–43.

Second, if Congress has not directly addressed the precise question at issue, then "the question for the question for the court is whether the agency's interpretation is based on a permissible construction of the statute." *Id.* at 843. An agency's statutory interpretation is entitled to deference, as long as it is reasonable. *Id.* at 843–44.

Section 213(a)(1) provides, in relevant part, that "any employee employed in a bona fide executive, administrative, or professional capacity . . . as such terms are defined and delimited from time to time by regulations of the Secretary" shall be exempt from minimum wage and overtime requirements. 29 U.S.C. § 213(a)(1). Here, the precise question at issue is what constitutes an employee employed in a "bona fide executive, administrative, or professional capacity." Since the statute does not define the terms "executive," "administrative,"

"professional" or "capacity," the Court must examine the plain meaning of the terms at or near the time Congress enacted the statute. *Taniguchi v. Kan Pac. Saipan, Ltd.*, 132 S. Ct. 1997, 2002 (2012). "Beyond the law itself, dictionary definitions inform the plain meaning of a statute." *United States v. Radley*, 632 F.3d 177, 182–83 (5th Cir. 2011) (citing *United States v. Ferguson*, 369 F.3d 847, 851 (5th Cir. 2004)).

Generally, the plain meanings of executive, administrative, and professional capacity relate to a person's performance, conduct, or function. The Oxford English Dictionary defined "executive" as someone "[c]apable of performance; operative . . . [a]ctive in execution, energetic . . . [a]pt or skillful in execution." *Executive*, 8 *The Oxford English Dictionary* (1st ed. 1933). "Administrative" was defined as "[p]ertaining to, or dealing with, the conduct or management of affairs; executive." *Administrative*, 1 *The Oxford English Dictionary* (1st ed. 1933). The dictionary also defined "professional" as "[p]ertaining to, proper to, or connected with a or one's profession or calling . . . [e]ngaged in one of the learned or skilled professions . . . [t]hat follows an occupation as his (or her) profession, life-work, or means of livelihood." *Professional*, 8 *The Oxford English Dictionary* (1st ed. Supp. 1933). "Capacity" was understood to mean "position, condition, character, relation," or "to be in, put into . . . a position which enables or renders capable." *Capacity*, 2 *The Oxford English Dictionary* (1st ed. 1933).

After reading these plain meanings in conjunction with the statute, it is clear Congress defined the EAP exemption with regard to duties. In other words, Congress unambiguously intended the exemption to apply to employees who perform "bona fide executive, administrative, or professional capacity" duties. The statute's use of "bona fide" serves as further evidence of Congress's intent. For instance, the Oxford English Dictionary defined "bona fide" as "[i]n good

faith, with sincerity; genuinely." *Bona fide*, 1 *The Oxford English Dictionary* (1st ed. 1933). The fact that bona fide modifies the terms executive, administrative, and professional capacity suggests the exemption should apply to those employees who, in good faith, perform actual executive, administrative, or professional capacity duties. Therefore, the Court finds Section 213(a)(1) is unambiguous because the plain meanings of the words in the statute indicate Congress's intent for employees doing "bona fide executive, administrative, or professional capacity" duties to be exempt from overtime pay.

The Court next considers whether the Department has given effect to Congress's unambiguous intent. Section 213(a)(1) authorizes the Department to define and delimit the EAP exemption through regulations. The plain meaning of "define" is to "state explicitly; to limit; to determine the essential qualities of; to determine the precise signification of; to set forth the meaning or meanings of," and the plain meaning of "delimit" is "to fix or mark the limits of: to demarcate; bound." *Walling v. Yeakley*, 140 F.2d 830, 831 (10th Cir. 1944). Courts have recognized the EAP exemption gives the Department "broad authority to 'defin[e] and delimi[t]' the scope of the exemption for executive, administrative, and professional employees." *Auer v. Robbins*, 519 U.S. 452, 456 (1997); *see also Wirtz v. Miss. Publishers Corp.*, 364 F.2d 603, 608 (5th Cir. 1966) (asserting the EAP exemption "gives the Secretary broad latitude to 'define and delimit' the meaning of the term 'bona fide executive . . . capacity'").[5] However, the Department's authority is limited by the plain meaning of the words in the statute and Congress's intent. Specifically, the Department's authority is limited to determining the essential qualities

---

[5] The Court recognizes *Wirtz* is controlling and stands for the proposition that the Department has the authority to implement a salary-level test. This opinion is not making any assessments regarding the general lawfulness of the salary-level test or the Department's authority to implement such a test. Instead, the Court is evaluating only the salary-level test as amended by the Department's Final Rule, which is invalid under both steps of *Chevron*. *Wirtz* is distinguishable from this case because the Fifth Circuit did not evaluate the salary-level test under the Final Rule. As a result, *Wirtz* offers no guidance to the Court on the lawfulness of the Department's Final Rule salary-level test.

13

of, precise signification of, or marking the limits of those "bona fide executive, administrative, or professional capacity" employees who perform exempt duties and should be exempt from overtime pay. With this said, the Department does not have the authority to use a salary-level test that will effectively eliminate the duties test as prescribed by Section 213(a)(1). *See Michigan v. EPA*, 135 S. Ct. 2699, 2707–08 (2015) ("*Chevron* allows agencies to choose among competing reasonable interpretations of a statute; it does not license interpretive gerrymanders under which an agency keeps parts of statutory context it likes while throwing away parts it does not."). Nor does the Department have the authority to categorically exclude those who perform "bona fide executive, administrative, or professional capacity" duties based on salary level alone. In fact, the Department admits, "[T]he Secretary does not have the authority under the FLSA to adopt a 'salary only' test for exemption." 81 Fed. 32,446 (citing Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees; Final Rule, 69 Fed. Reg. 22,122, 22,173 (Apr. 23, 2004) (codified at 29 C.F.R. pt. 541)).

The updated salary-level test under the Final Rule does not give effect to Congress's unambiguous intent. Since 2004, the Department has required an employee to meet the following criteria to be exempt from overtime pay: (1) the employee must be salaried; (2) the employee must be paid above a minimum salary level; and (3) the employee must perform executive, administrative, or professional capacity duties. While the plain meaning of Section 213(a)(1) does not provide for a salary requirement, the Department has used a permissible minimum salary level as a test for *identifying* categories of employees Congress intended to exempt. *See, e.g.*, *Wirtz*, 364 F.2d at 608 (upholding the Department's authority to use a minimum salary level). The Department sets the minimum salary level as a floor to "screen[] out

the obviously nonexempt employees, making an analysis of duties in such cases unnecessary." Harry Weiss, *Report and Recommendations on Proposed Revisions of Regulations, Part 541*, at 7–8 (1949). Further, the Department acknowledges that in using this method, "[a]ny new figure recommended should also be somewhere near the lower end of the range of prevailing salaries for these employees." *Id.* at 11–12. The use of a minimum salary level in this manner is consistent with Congress's intent because salary serves as a defining characteristic when determining who, in good faith, performs actual executive, administrative, or professional capacity duties.

The Final Rule more than doubles the Department's previous minimum salary level, increasing it from $455 per week ($23,660 annually) to $913 per week ($47,476 annually). This significant increase would essentially make an employee's duties, functions, or tasks irrelevant if the employee's salary falls below the new minimum salary level. As a result, entire categories of previously exempt employees who perform "bona fide executive, administrative, or professional capacity" duties would now qualify for the EAP exemption based on salary alone. The text of the Final Rule confirms this: "White collar employees subject to the salary level test earning less than $913 per week will not qualify for the EAP exemption, and therefore will be eligible for overtime, *irrespective of their job duties and responsibilities*." Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 81 Fed. Reg. 32,391, 32,405 (May 23, 2016) (emphasis added).

This is not what Congress intended with the EAP exemption. Congress unambiguously directed the Department to exempt from overtime pay employees who perform "bona fide executive, administrative, or professional capacity" duties. However, the Department creates a Final Rule that makes overtime status depend predominately on a minimum salary level, thereby

supplanting an analysis of an employee's job duties. The Department estimates 4.2 million workers currently ineligible for overtime, and who fall below the minimum salary level, will automatically become eligible under the Final Rule without a change to their duties. 81 Fed. Reg. 32,405; *see also* 69 Fed. Reg. 22,173 (admitting "[t]he Department has always maintained that the use of the phrase 'bona fide executive, administrative or professional capacity' in the statute requires the performance of specific duties"). Because the Final Rule would exclude so many employees who perform exempt duties, the Department fails to carry out Congress's unambiguous intent. Thus, the Final Rule does not meet *Chevron* step one and is unlawful.

Even if the Court determines Section 213(a)(1) is ambiguous about what constitutes "any employee employed in a bona fide executive, administrative, or professional capacity," the Department's Final Rule does not pass muster under *Chevron* step two. The Supreme Court in *Chevron* explained, "If the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." 467 U.S. at 843. In such a case, a reviewing court must give deference to an agency's answer or interpretation of a statute if the agency's regulation is reasonable. *Id.* at 843–44. Although deference is given to agency interpretations of ambiguous statutes, "the judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent." *Id*. at 843 n.9.

The Court finds the Department's Final Rule is not "based on a permissible construction" of Section 213(a)(1). The Final Rule more than doubles the previous minimum salary level.[6] By raising the salary level in this manner, the Department effectively eliminates a consideration of

---

[6] During questioning at the preliminary injunction hearing, the Court suggested it would be permissible if the Department adjusted the 2004 salary level for inflation. In fact, the Court stated in a question, "[I]f [the salary level] had been just adjusted for inflation, the 2004 figure, we wouldn't be here today . . . because [the salary level] would still be operating more the way it has . . . as more of a floor." (Dkt. #77, Nov. 16, 2016 Trial Tr. at 109:1–3, 6–8).

whether an employee performs "bona fide executive, administrative, or professional capacity" duties. As explored above, the plain meaning of the words in Section 213(a)(1) indicates Congress defined the EAP exemption with regard to duties. In other words, Congress intended for employees who perform "bona fide executive, administrative, or professional capacity" duties to be exempt from overtime pay. Congress delegated authority to the Department to not only define and delimit the EAP exemption but also to stay consistent with Congress's intent. However, with the Final Rule, the Department ignores Congress's intent. If Congress was ambiguous about what specifically constituted an employee subject to the EAP exemption, Congress was clear that the determination should involve at least a consideration of an employee's duties. Courts are "not obliged to stand aside and rubberstamp their affirmance of administrative decisions that they deem inconsistent with the statutory mandate or that frustrate the congressional policy underlying a statute." *Nat'l Pork Producers Council v. EPA*, 635 F.3d 738, 753 (5th Cir. 2011) (quoting *Tex. Power & Light Co. v. FCC*, 784 F.2d 1265, 1269 (5th Cir. 1986)). The Department has exceeded its authority and gone too far with the Final Rule. Nothing in Section 213(a)(1) allows the Department to make salary rather than an employee's duties determinative of whether a "bona fide executive, administrative, or professional capacity" employee should be exempt from overtime pay. *See* 81 Fed. 32,446 (indicating the Department admitted it could not create an evaluation for overtime exemption based on salary alone). Accordingly, the Final Rule is not a reasonable interpretation of Section 213(a)(1) and thus is not entitled to *Chevron* deference.

The Final Rule also creates an automatic updating mechanism that adjusts the minimum salary level every three years. Having determined the Final Rule is unlawful under *Chevron*, the Court similarly determines the automatic updating mechanism is unlawful.

17

Business Plaintiffs further claim the Final Rule is arbitrary, capricious, or otherwise contrary to law in violation of the APA. The Court concludes it is unnecessary to address this argument in light of the unlawfulness of the Final Rule under *Chevron*.

## CONCLUSION

Accordingly, it is therefore **ORDERED** that Business Plaintiffs' Motion for Expedited Summary Judgment (Dkt. #35) is **GRANTED**. The Court hereby concludes the Department's Final Rule described in 81 Fed. Reg. 32,391 is invalid.

**SIGNED this 31st day of August, 2017.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE